1220

SPRINGS INDUSTRIES, INC., Respondent v. SOUTH CAROLINA SECOND INJURY FUND, Appellant.

(372 S. E. (2d) 915)

Court of Appeals

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. P. Brooks Shealy, Jr.*, Columbia, *for appellant.*

*William S. Davies, Jr.* and *Steven M. Wynkoop* of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for respondent.*

Heard May 18, 1988.

Decided Sept. 26, 1988.

LITTLEJOHN, Acting Judge:

Springs Industries sought reimbursement from the South Carolina Second Injury Fund (the Fund) for workers' compensation benefits paid to Edna Vespers Kinghorn. The Hearing Commissioner and Full Commission denied the request and Springs Industries appealed. The Circuit Court reversed and ordered reimbursement. We affirm.

This case involves two statutory sections of the Workers' Compensation Act, the Second Injury Fund statutes, S. C. Code Ann. Sections 42-9-400 to -430 (1976 & Supp. 1987), and the Occupational Disease statutes, S. C. Code Ann. Sections 42-11-10 to -200 (1976 & Supp. 1987). The Fund appears to argue that the applicable versions of these statutes are

determined by different effective dates, date of injury for Occupational Disease and date of claim for Second Injury Fund. We need not reach this issue, however, because we conclude that the Circuit Court should be affirmed under the statutes argued by the Fund.

The Second Injury Fund was created in 1972. *See*, S. C. Code Ann. Section 42-9-400 (1976). Its purpose is to encourage employers to hire handicapped persons. It is designed to compensate employees fully for subsequent injuries without penalizing employers for employing them. *Boone's Masonry Construction Co., Inc. v. South Carolina Second Injury Fund*, 267 S. C. 277, 227 S. E. (2d) 659 (1976); *Wyndham v. R. A. & E. M. Thornley and Co.*, 291 S. C. 496, 354 S. E. (2d) 399 (Ct. App. 1987): Custy, *The Second Injury Fund: Encouraging Employment of the Handicapped Worker in South Carolina*, 27 S. C. L. Rev. 661 (1976). If the handicapped employee suffers a subsequent employment-related injury, resulting in the award of workers' compensation benefits, then the employer is entitled to partial reimbursement if it satisfies the applicable statutory requirements.

The Second Injury Fund statutes establish the following test for reimbursement:

(1) when employed, the employee had a preexisting permanent physical impairment which constituted a hindrance to obtaining employment, S. C. Code Ann. Section 42-9-400(d) (1976);

(2) the employer knew of employee's condition at the time employee was hired, S. C. Code Ann. Section 42-9-400(c) (1976);[1] and

(3) one of the two following conditions is satisfied:
(a) the subsequent injury combines with or aggravates the preexisting condition to cause "substantially greater" liability for workers' compensation benefits than would have been caused by the subse-

---

[1] The Fund does not challenge Springs Industries' knowledge of Kinghorn's preexisting condition. The Fund's "knowledge" exception states only that the evidence did not show a permanent physical impairment. Thus, the only issue actually preserved by this exception is whether Kinghorn had such an impairment. Moreover, although the Fund references this exception in its brief, the knowledge issue is not argued and, therefore, is abandoned. *Shannon v. Shannon*, 292 S. C. 112, 355 S. E. (2d) 4 (Ct. App. 1987).

quent injury alone, S. C. Code Ann. Section 42-9-400(a) (1976);[2]

*or*

(b) the second injury most probably would not have occurred but for the preexisting condition. S. C. Code Ann. Section 42-9-400(g) (1976).

The central factual issue is whether Kinghorn suffered from a preexisting permanent impairment as defined by Section 42-9-400(d) (1976). In reviewing this issue, this Court is limited to a determination of whether the Commission's decision is clearly erroneous in view of the reliable, probative and substantial evidence in the record as a whole. *Lark v. Bi-Lo, Inc.*, 276 S. C. 130, 276 S. E. (2d) 304 (1981). The Commission found that Kinghorn did not have a "permanent physical impairment." The Circuit Court found that the evidence showed a permanent impairment. We conclude that the only reasonable inference to be drawn from the evidence is that Kinghorn did have such an impairment.

Kinghorn testified that she began working in the carding room of cotton mills in 1943. In 1970, she developed breathing difficulties such as shortness of breath, wheezing, and a tightness in her chest. Walking up stairs and simple household tasks would cause these problems. In 1973, she developed a chronic productive cough. Kinghorn began working for Springs Industries in May 1975. Nine months later, she became totally disabled due to byssinosis, a form of chronic obstructive pulmonary disease.

Dr. Willis examined Kinghorn. He was the plant physician when she began working for Springs Industries. In his opinion, it was "more likely than not" that Kinghorn suffered from pulmonary disease when hired by Springs Industries.

Dr. Williams also examined Kinghorn. He testified that

---

[2] Neither the hearing commissioner, full commission, or circuit court reached this issue and, therefore, we do not reach this issue. The Circuit Court, however, concluded that the "but for" test of Section 42-9-400(g) was satisfied and we agree. *See* note 4, *infra*, and accompanying text. Subsection (g) provides that if the "but for" test is satisfied, then it is not necessary to satisfy the "substantially greater" liability test of subsection (a).

her impairment was probably permanent when she began working for Springs Industries. He explained that "it would be most unusual to see [her] degree of impairment on a temporary basis." Dr. Williams testified further that Kinghorn's work with Springs Industries was not a major cause of her present total disability. Her previous exposure to cotton dust for thirty-one years was the major cause and, but for this previous exposure, she would have suffered very little impairment.

Dr. Galphin also testified. He did not examine Kinghorn but did review her medical records. He testified that byssinosis is a chronic obstructive pulmonary disease caused by exposure to cotton dust on a regular basis. It is a progressive disease that generally requires a minimum exposure of seven to ten years. The condition becomes permanent once a significant degree of impairment develops. Exposure for less than one year would not result in total disability.

Dr. Galphin concluded that Kinghorn had byssinosis resulting from thirty-one years of exposure to cotton dust. Her previous employment was the major cause of her present condition. He also concluded that her condition was permanent when hired by Springs Industries because of its severity.

The Fund contends that Springs Industries failed to prove a permanent physical impairment because the medical testimony did not meet the "most probably" standard as to permanency. We disagree. The medical testimony satisfied the "most probably" standard although the doctors did not use that precise terminology. *See Cline v. Nosredna Corporation, Inc.,* 291 S. C. 75, 352 S. E. (2d) 291 (Ct. App. 1986) (medical testimony of "very likely probability" sufficient when combined with other medical testimony). A person with thirty-one years of exposure to cotton dust who becomes permanently and totally disabled after only nine additional months of exposure must have had a permanent impairment at the time of employment.

We also conclude that the evidence establishes that Kinghorn's condition was a hindrance to employment.

Thirty-one years of exposure to cotton dust, when combined with a chronic productive cough and breathing difficulties from simple tasks, would be a hindrance to ob-

taining employment, especially when it involves more exposure to cotton dust. The only reasonable inference to be drawn from the evidence is that her condition was a hindrance to obtaining employment.

Having concluded that Kinghorn did suffer from a permanent physical impairment as defined by the statute, we now consider whether Kinghorn's preexisting impairment was a "but for" cause of the subsequent injury pursuant to Section 42-9-400(g).[3]

Neither the Hearing Commissioner, nor the Full Commission, reached the "but for" test of subsection (g) because of their conclusion that Kinghorn did not have a "permanent physical impairment." The Circuit Court, however, did reach this factual issue and concluded that the test was satisfied.[4] Substantial evidence supports this factual conclusion.

The test of subsection (g) is whether "the subsequent injury most probably would not have occurred 'but for' the presence of the prior impairment." Kinghorn's subsequent injury was the onset of total permanent disability resulting from the additional nine months of exposure to cotton dust. The evidence clearly demonstrates that this subsequent injury would not have occurred "but for" the preexisting permanent impairment resulting from thirty-one years of previous exposure to cotton dust. Satisfaction of this "but for" test eliminates the need of satisfying the "substantially greater" liability test of subsection 42-9-400(a).

In sum, the only reasonable conclusion to be drawn from the substantial evidence in the record is that Springs Industries is entitled to reimbursement from the Second Injury Fund.

Accordingly, the order of the Circuit Court is

Affirmed.

SHAW and BELL, JJ., concur.

---

[3] As noted earlier, we need not and do not reach the issue of "substantially greater liability" for workers compensation benefits. See note 2, *supra*, and accompanying text.

[4] The Fund does not argue that the Circuit Court should have remanded this issue rather than decide it. Rather, the Fund only challenges the decision reached by the Circuit Court.

Thus, we consider this issue.