528 S.E.2d 91

**CITY OF GREENVILLE, Appellant,**

v.

**SOUTH CAROLINA SECOND INJURY FUND, Respondent.**

**No. 3115.**

Court of Appeals of South Carolina.

Heard Dec. 7, 1999.

Decided Feb. 7, 2000.

Michael A. Farry and David A. Wilson, both of Horton, Drawdy, Ward & Black, of Greenville, for appellant.

Chief Counsel Brooks Shealy, of South Carolina Second Injury Fund, of Columbia, for respondent.

HUFF, Judge:

In this Worker's Compensation case, the City of Greenville (City) appeals from a circuit court order affirming the Full Commission's finding the City was not entitled to reimbursement from the Second Injury Fund for substantially increased medical or compensation expenses paid to John Gilstrap. We affirm.

## FACTS

On September 27, 1991, John Gilstrap, a sergeant with the City of Greenville Police Department, fell thirty to forty feet while repelling during a department training exercise. As a result of the fall, Gilstrap sustained severe injuries including: a burst fracture at L1; a sacral fracture; a pelvic fracture; foot strain; symphysial diastasis with bladder herniating between the diastasis; and a neurogenic bladder. Gilstrap

underwent emergency spinal surgery the day of the fall but the burst fracture nonetheless left him with significant paralysis from the waist down. After the fall, Gilstrap was also noted to have pre-existing arthritis of the knee and degenerative disc disease. Dr. Clark Jernigan gave Gilstrap an eighty-one percent impairment rating. Because of his injuries, it is unlikely he will be able to work again. Gilstrap completed the twelfth grade and has never done any other type of work except police work. He worked for the Police Department for seventeen years prior to the accident.

## PROCEDURAL HISTORY

The City of Greenville contended Gilstrap's preexisting degenerative disk . disease combined with his injuries to cause substantially greater disability and medical costs than would have resulted from the injuries alone. To obtain reimbursement from the Second Injury Fund, the City filed a form 54 with the Workers' Compensation Commission. The Fund countered with a form 55 which denied the City's allegation Gilstrap's injuries and expenses were substantially increased by a preexisting impairment and simultaneously moved any hearing on the matter be delayed until Gilstrap received a Final Award or agreement for his disability.

On June 17, 1997, the Single Commissioner denied the Fund's motion to delay a determination. The Commissioner's Order concluded: 1) substantially all of Gilstrap's disability was caused by the fall rather than· his preexisting condition; 2) Gilstrap is a paraplegic as a result of the fall and cannot suffer greater disability under S.C.Code Ann. Section 42-9-10 (1985) than that caused by the paraplegia; 3) the City did not meet the knowledge requirement of S.C.Code Ann. Section 42-9-400(c) (1985) regarding Gilstrap's left knee; and 4) there is no evidence Gilstrap incurred greater medical expenses due to his preexisting condition.

The Single Commissioner's findings and conclusions were affirmed *in toto* by the Full Appellate Panel on February 10, 1998. The circuit court also affirmed the Order of the Full Commission on July 27, 1998.

## DISCUSSION

■ On appeal, the City argues it is entitled to reimbursement from the Second Injury Fund. The legislative purpose of the Second Injury Fund is to "encourage the employment of disabled or handicapped persons without penalizing an employer with greater liability if the employee is injured because of his preexisting condition." *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund*, 318 S.C. 516, 518, 458 S.E.2d 550, 551 (1995) (citing *Springs Industries v. South Carolina Second Injury Fund*, 296 S.C. 359, 372 S.E.2d 915 (Ct.App. 1988)).

Reimbursement from the Fund is controlled by S.C.Code Ann. Section 42–9–400 (1985) which provides in pertinent part:

(a) If an employee who has a permanent physical impairment ... incurs a subsequent disability from injury by accident arising out of and in the course of his employment, *resulting in compensation and medical payments liability or either, for disability that is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment, than that which would have resulted from the subsequent injury alone,* ... but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund as created by 42–7–310 for compensation and medical benefits in the following manner:

(1) Reimbursement of all *compensation* benefit payments payable subsequent to those payable for the first seventy-eight weeks following the injury.

(2) Reimbursement of fifty percent of *medical payments* in excess of three thousand dollars during the first seventy-eight weeks following the injury and then reimbursement of all medical benefit payments payable subsequent to the first seventy-eight weeks following the injury; *provided, however, in order to obtain reimbursement for medical expense during the first seventy-eight weeks following the subsequent injury, an employer or carrier must establish that his liability for medical payments is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggrava-*

*tion of the preexisting impairment, than that which would have resulted from the subsequent injury alone.*

(Emphasis added). Additionally, section 42–9–400 contains a 'knowledge' requirement which states:

(c) In order to qualify under this section for reimbursement from the Second Injury Fund, *the employer must establish when claim is made for reimbursement thereunder, that the employer had knowledge of the permanent physical impairment at the time that the employee was hired, or at the time the employee was retained in employment after the employer acquired such knowledge.* Provided, however, the employer may qualify for reimbursement hereunder upon *proof that he did not have prior knowledge of the employee's preexisting physical impairment because the existence of such condition was concealed by the employee or was unknown to the employee.*

(d) As used in this section, "permanent physical impairment" means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.

(Emphasis added).

### STANDARD OF REVIEW

██ In reviewing an agency order, this court "may not substitute its judgment as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Clade v. Champion Laboratories,* 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998) (citing *Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 466 S.E.2d 357 (1996)). " 'Substantial evidence' is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135–136, 276 S.E.2d 304, 306 (1981) (citation omitted).

██ The Full Commission found the City was not entitled to reimbursement from the Fund for greater medical or compensation expenses. We initially note the distinction be-

tween an employer's greater liability for compensation and an employer's greater liability for medical expenses. When an employee has been found to be totally disabled by an accident, an employer cannot incur greater liability for compensation due to a preexisting condition. *See Liberty Mutual Ins. Co. v. South Carolina Second Injury Fund, supra.* Therefore the lower court properly refused the City's request for compensation reimbursement from the Second Injury Fund.

Nonetheless, an employer may incur greater liability for a totally disabled employee's medical payments due to a preexisting condition. However, in the instant case, the only evidence of greater medical expenses due to Gilstrap's preexisting condition was a cat scan and a possible knee injection. Dr. Jernigan estimated the cost of the cat scan at $500.00 to $600.00. No value was placed on the knee injection. Compared to the cost of Gilstrap's entire hospital stay ($153,-989.79) $500.00 or $600.00 does not constitute a substantial increase in medical expenses.

Jernigan conceded at the time of his testimony that the preexisting condition did not affect the length of time necessary for Gilstrap to reach maximum medical improvement. Additionally, per Jernigan, Gilstrap's paraplegia may have decreased his sensation of arthritis pain in his knee. We find this testimony constitutes substantial evidence supporting the lower court's affirmance of the Full Commission's Order.

Moreover, the Full Commission found the City did not meet the knowledge requirement of section 42–9–400(c) with respect to Gilstrap's knee. In order to meet this requirement, the City had the burden of proving at least one of the following circumstances: 1) it had knowledge of Gilstrap's arthritis at the time Gilstrap was hired; 2) Gilstrap concealed his arthritis from the City; or 3) Gilstrap did not know he had arthritis. The record revealed Gilstrap had prior surgery on his knee. Therefore, he was presumably aware he had arthritis in this knee. The City, however, failed to present any evidence Gilstrap intentionally concealed this information. Thus, even if the City had incurred substantially greater medical expenses because of the arthritis in Gilstrap's knee, the City would not qualify for reimbursement under subsection (c).

The City asks this court to determine whether it may bring an action for reimbursement of future medical expenses once they are incurred. Jernigan testified Gilstrap is likely to have major problems in the future due to the progression of his degenerative disc disease. Jernigan described Gilstrap as "a time bomb and he's going to wear out." We make no ruling as to the City's entitlement to reimbursement for future medical expenses incurred because of Gilstrap's degenerative disk disease. This court may not issue advisory opinions. *Booth v. Grissom*, 265 S.C. 190, 217 S.E.2d 223 (1975).

The City did not meet its burden of proof under section 42–9–400, either in terms of demonstrating a substantial increase in medical and compensation expenses or in terms of the knowledge requirement. Accordingly, the judgment of the lower court is

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.