**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Arrowpoint Capital Corporation/Arrowood Indemnity Co., Appellant,

v.

South Carolina Second Injury Fund, Respondent,

IN RE: Mary McConico, Employee,

v.

Yuasa-Exide, Inc., Employer, and Arrowpoint Capital Corp./Arrowood Indemnity Co., Carrier.

Appellate Case No. 2014-002215

Appeal From Sumter County
W. Jeffrey Young, Circuit Court Judge

Unpublished Opinion No. 2017-UP-227
Heard January 25, 2017 – Filed May 31, 2017

**REVERSED**

Vernon F. Dunbar, of McAngus, Goudelock & Courie, LLC, of Greenville, for Appellant.

Timothy Blair Killen, of Willson, Jones, Carter &
Baxley, P.A., of Mount Pleasant, for Respondent.

**PER CURIAM:**  Arrowpoint Capital Corporation, a/k/a Arrowood Indemnity
Company (Carrier) appeals the circuit court's order affirming the Appellate Panel
of the Workers' Compensation Commission's (the Commission's) denial of
Carrier's claim for reimbursement from the Second Injury Fund (the Fund).[1]
Carrier argues the court erred in (1) denying its claim for reimbursement because
Carrier met all elements for Fund reimbursement pursuant to section 42-9-400 of
the South Carolina Code (2015) and (2) determining its reimbursement claim was
not timely filed and thus barred.  We reverse.

### 1.  Reimbursement Test

The circuit court committed an error of law in interpreting section 42-9-400(a) to
preclude reimbursement.  *See Thompson v. S.C. Steel Erectors*, 369 S.C. 606, 612,
632 S.E.2d 874, 878 (Ct. App. 2006) ("The appellate court may reverse or modify
the Commission's decision only if the claimant's substantial rights have been
prejudiced because the decision is affected by an error of law or is clearly
erroneous in view of the reliable, probative, and substantial evidence on the whole
record."); *Springs Indus., Inc. v. S.C. Second Injury Fund*, 296 S.C. 359, 364, 372
S.E.2d 915, 918 (Ct. App. 1988) (holding "the only reasonable conclusion to be
drawn from the substantial evidence in the record is that Springs Industries is
entitled to reimbursement from the Second Injury Fund").
Section 42-9-400(a) provides,

> If an employee who has a permanent physical
> impairment from any cause or origin incurs a subsequent
> disability from injury by accident arising out of and in

---

[1] The Legislature funded the Second Injury Fund on a continuing basis through
"equitable assessments" upon insurance carriers, self-insurers, and the State
Accident Fund.  S.C. Code Ann. § 42-7-310(d)(2) (2015).  In 2007, the Legislature
terminated the Fund effective July 1, 2013, and tasked the State Fiscal
Accountability Authority with the "orderly winding down of the affairs of the fund
so that the remaining liabilities of the fund are paid utilizing assessments,
accelerated assessments, annuities, loss portfolio transfers, or such other
mechanisms as are reasonably determined necessary to fund any remaining
liabilities of the fund."  S.C. Code Ann. § 42-7-320(A) (Supp. 2016).

the course of his employment, resulting in compensation and medical payments liability or either, for disability that is substantially greater and is caused by aggravation of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall pay all awards of compensation and medical benefits provided by this title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund . . . .

In reversing, we are bound by our supreme court's holding in *State Workers' Compensation Fund v. S.C. Second Injury Fund*, 313 S.C. 536, 539–40, 443 S.E.2d 546, 548 (1994) (determining a firefighter's "total disability from heart disease in 1986 qualifie[d] as a subsequent disability arising out of his employment" and reversing this court's denial of reimbursement). There, the State Workers' Compensation Fund successfully pursued Second Injury Fund reimbursement when a Forestry Commission firefighter diagnosed with coronary artery disease in 1974 was subsequently rendered totally disabled due to arteriosclerosis and cardiac disease. *Id.* at 537, 443 S.E.2d at 547. In effect, the supreme court concluded the firefighter's occupational cardiac disease, as aggravated by the hazards of his work, constituted both a preexisting condition and subsequent injury. *See id.* at 539, 443 S.E.2d at 548 (holding separate work-related injuries are not required for reimbursement, and "a 'prior disability' need not result from an industrial accident").

Yuasa-Exide, Inc.'s (Employer's) internal medical records demonstrate that throughout Mary McConico's (Claimant's) twenty-five years of employment, she was prescribed medicine for hypertension, had abnormal chest x-rays and electrocardiograms, and sought treatment for severe headaches. Employer's records further reflect that Claimant's lead levels ranged from seven to fifty-five micrograms per deciliter of blood over the course of her employment. Employer placed Claimant in its medical removal program on multiple occasions because her lead levels exceeded thirty-six micrograms per deciliter of blood over a three-month period, in violation of industry standards. Ultimately, Claimant suffered an aneurysm and debilitating stroke on July 31, 1999, her last day of employment. Because section 42-9-400(a) allows reimbursement if an "employee who has a permanent physical impairment *from any cause or origin* incurs a subsequent disability from injury by accident," (emphasis added) it follows that Carrier should be reimbursed for permanent physical impairments caused by Claimant's lead exposure and predating her July 31, 1999 triggering injury date. Here, Claimant

was exposed to lead at work, developed permanent physical impairments of heavy metal poisoning, coronary artery disease, and hypertension from the exposure, and subsequently suffered a debilitating stroke. Thus, the circuit court's interpretation of section 42-9-400(a) to preclude reimbursement conflicts with our supreme court's analysis in *State Workers' Compensation Fund*.

Additionally, Carrier satisfies the remaining reimbursement factors that

> 1. An employee must have a permanent physical impairment from any origin;
>
> 2. The employer retains the employee after knowledge of the prior impairment;
>
> 3. The employee incurs a subsequent disability from injury by accident arising out of and in the course of his employment;
>
> 4. The subsequent injury combines with or aggravates the preexisting condition to cause "substantially greater" disability than would have been caused by the subsequent injury alone, *or*
>
> 5. The second injury most probably would not have occurred but for the preexisting condition.

*State Workers' Comp. Fund*, 313 S.C. at 538, 443 S.E.2d at 547–48 (citations omitted).

Substantial evidence in the form of twenty-five years of in-house medical records establishes Employer had knowledge of her coronary artery disease, heavy metal poisoning, and hypertension. *See* § 42-9-400(c) (explaining the employer must establish that it "had knowledge of the permanent physical impairment at the time that the employee was hired, or at the time the employee was retained in employment after the employer acquired such knowledge"); § 42-9-400(d) ("When an employer establishes his prior knowledge of the permanent impairment, then there shall be a presumption that the condition is permanent and that a hindrance or obstacle to employment or reemployment exists when the condition is one of the following impairments."); *see also State Accident Fund v. S.C. Second Injury Fund*, 409 S.C. 240, 246, 762 S.E.2d 19, 22 (2014) ("A presumption shifts the

burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption." (quoting *Presumption*, Black's Law Dictionary (9th ed. 2009))).

Because we find Claimant's preexisting conditions are analogous to "cardiac disease" and "heavy metal poisoning" as listed in section 42-9-400(d), there is also a presumption, which the Fund failed to rebut, that her conditions were permanent physical impairments[2] and a hindrance or obstacle to employment. Notably, two physicians stated Claimant had multiple preexisting conditions—which were aggravated by or combined with her lead exposure to render her permanently disabled—and a third physician found Claimant was totally disabled, listing ten health conditions, "which [were] caused, aggravated, or accelerated by [her] occupational lead exposure and physical demands at the Exide plant." Accordingly, we reverse the circuit court's order denying Carrier reimbursement.

## 2. Section 42-7-320(B)(2) and Timely Filing

Finally, we find the circuit court erred in determining Carrier's claim for reimbursement was not timely filed and thus barred by section 42-7-320(B)(2). To effect the closure of the Fund, section 42-7-320(B)(2) required, "[a]n employer, self-insurer, or insurance carrier must submit *all required information* for consideration of accepting a claim to the Second Injury Fund by June 30, 2011. Failure to submit *all required information* to the fund by June 30, 2011, so that the claim can be accepted, compromised, or denied shall bar an employer, self-insurer, or insurance carrier from recovery from the fund." (emphases added).

The Commission found Claimant's post-employment records were "required by the Fund to determine whether her disability or medical expenses were substantially increased due to the alleged preexisting condition." Carrier submitted two and a half decades of Employer's internal medical records for Claimant to the Fund in hard copy; the Fund received them by June 30, 2011. Carrier also unsuccessfully attempted to submit Claimant's post-employment medical records by way of a hyperlink on compact disc (CD) on June 30, 2011. When the Fund discovered it was unable to access these post-employment medical records through the hyperlink

---

[2] "As used in this section, 'permanent physical impairment' means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." S.C. Code Ann. § 42-9-400(d) (2015).

in September 2011, it notified counsel for Carrier the records could not be retrieved.  Approximately three days later, Carrier hand delivered another CD containing these same "linked" medical records to the Fund.

The circuit court affirmed the Commission's finding that Carrier failed to submit "all required information" by the June 30 deadline and barred the claim for reimbursement.  This was error.  We find Claimant's post-employment medical records were unnecessary to the Fund's decision to accept, compromise, or deny Carrier's reimbursement claim because the majority of these records address ailments unrelated to Claimant's toxic exposure such as urinary frequency, bronchitis, diabetes, blurred vision, heel pain, and knee pain.  Moreover, Claimant did not receive compensation from Employer for past, present, or future medical treatment; thus, Carrier has not sought reimbursement for such.  Here, it is a stretch to argue that such post-employment records constitute "required information" and a full bar to reimbursement in this case.  While it may well have been within the Commission's discretion to exclude from consideration such post-employment medical records based upon a technological error in the CD submitted by Carrier, it was error for the Commission to apply the statutory deadline as a basis to bar Carrier's claim.

**REVERSED.**

**LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.**